The **ROBERTSON LUMBER COMPANY**, a corporation, Plaintiff and Respondent,

v.

**PROGRESSIVE CONTRACTORS, INC.**, a corporation, and Defendant,

Continental Casualty Company, a corporation and Fidelity and Casualty Company of New York, a corporation, Defendants and Appellants.

Civ. No. 8462.

Supreme Court of North Dakota.

July 3, 1968.

Degnan, McElroy, Lamb & Camrud, Grand Forks, for appellants.

Shaft, Benson, Shaft & McConn, Grand Forks, for respondent.

TEIGEN, Chief Justice.

The defendant sureties have appealed from the adverse judgment in a Capehart bond suit brought by a materialman who furnished materials on a housing project authorized under the Capehart Housing Act. The case was tried to the court and demand has been made for trial de novo in this Court.

The plaintiff, Robertson Lumber Company, which is the materialman, instituted this suit against Progressive Contractors, Inc., the prime contractor, and its two payment and performance bond sureties, the Continental Casualty Company and the Fidelity and Casualty Company of New York, for materials furnished several subcontractors of the prime contractor, for

which it had not received payment. The defendant Progressive Contractors, Inc. was the prime contractor for the construction of 744 housing units at the United States Air Force Base, at Grand Forks, North Dakota, authorized under the Capehart Housing Act. The defendant sureties furnished payment and performance bonds as required under the Capehart Housing Act, as amended, 42 U.S.C.A. Sec. 1594 (a). The defendant Progressive Contractors, Inc. failed to answer the complaint and judgment has been entered against it by default. The defendant sureties answered setting out several defenses.

When the case came on for trial, the plaintiff and the defendant sureties stipulated the facts. The stipulation of facts admits that the plaintiff furnished the materials described in its complaint and that the value of the unpaid materials furnished was the sum of $13,780.08, and the stipulation provides that if judgment is entered for the plaintiff, it shall be entered for that amount.

It was also stipulated that the defendant Progressive Contractors, Inc. abandoned the building project on May 20, 1960, and notice as required by Sec. 4(a) of the payment and performance bond was sent to the principal alone [Progressive Contractors, Inc.] on July 22, 1960, which was within 90 days of the furnishing of the last materials but that no notice was given to the sureties. It was also stipulated that on April 20, 1961, (more than 90 days after the last materials were furnished) the plaintiff mailed notice as provided by Sec. 4(a) of the bond provisions to the required parties, and that such notices contained the proper information.

The defendant sureties in this appeal raise three principal issues which we must consider: first, jurisdiction over the subject matter; they contend the federal courts have exclusive jurisdiction in suits on Capehart bonds; second, the matter is res judicata; and, third, failure to give notice in accordance with the bond terms.

Thus, although the case is before us for trial de novo, there is no issue of fact for determination on this appeal. The issues raised are purely questions of law.

## HISTORY

This case and a companion case commenced by the same plaintiff but against Wilshire Contractors, Inc., and Continental Casualty Company, have followed a parallel course through the federal and state courts before this appeal was taken.

The two companion actions were first brought under the Miller Act, as provided by 40 U.S.C.A. Sec. 270b, in the Federal District Court, Northeastern Division in December of 1960. At a pretrial conference, the facts being stipulated and the contractor having defaulted, the issue between the plaintiff and the defendant sureties was narrowed to a single question of law. The question presented was whether the plaintiff had a right to maintain the actions for recovery upon Capehart payment and performance bonds when the notice requirements of the Miller Act had been complied with, but the notice requirements of the bonds had not been met. The district court rendered its decision in favor of the plaintiff. It held that the plaintiff had a right to sue upon the payment bond if it had complied with the provisions of the Miller Act, 40 U.S.C.A. Secs. 270a–270d, which provides for a single notice. The Capehart bond provisions provided notice requirements as follows:

"4. No suit or action shall be commenced hereunder by any claimant,

(a) Unless claimant shall have given written notice to any two of the following: The Principal, any one of the Obligees, or the Sureties above named, * * *"

United States for Use and Benefit of Robertson Lumber Company v. Progressive Contractors, Inc., 196 F.Supp. 171 (D. C.N.D.1961).

The opinion of the district court was rendered on May 24, 1961. Prior to that time, to wit: on April 20, 1961, the plaintiff mailed notices, as required by Sec. 4(a) of the bond, to the required parties as provided by the bond provisions. The decision of the federal district court was appealed to the Court of Appeals of the Eighth Circuit, and that court rendered its decision on June 30, 1962. (See Continental Casualty Company v. United States for Use and Benefit of Robertson Lumber Company, 305 F.2d 794 (8th Cir. 1962. (Cert. denied, 371 U.S. 922, 83 S.Ct. 290, 9 L.Ed.2d 231.) It reversed the federal district court and held that the notice provisions of the Miller Act did not govern in a suit on a Capehart bond. The circuit court ordered the judgment appealed from reversed and the cause was remanded to the district court with directions to dismiss the complaint.

While the federal cases were pending and after due notices had been given on April 20, 1961, the plaintiff commenced separate actions on the claims in the state court. These actions were brought on the bonds under the provisions of 28 U.S.C.A. Sec. 1352, providing concurrent jurisdiction in the state and federal courts. On May 15, 1961, counsel for the plaintiff and counsel for the defendant sureties stipulated " * * * that the above captioned matter shall be and hereby is removed * * * to United States Federal District Court for the District of North Dakota, Northeastern Division * * *." Pursuant to the stipulation, the Honorable Ronald N. Davies, Judge of the Federal District Court, ordered that the two cases be removed to the United States Federal Court for the District of North Dakota, Northeastern Division. This order was made on May 18, 1961. On the same date, the defendants Continental Casualty Company and Fidelity and Casualty Company filed their separate answers in federal court. No answer or other responsive pleading has ever been received, served, or filed by either of the defendants Progressive Contractors, Inc., or Wilshire Contractors, Inc.

The defendant sureties filed motions for summary judgments on February 26, 1963. Following oral arguments on said motions and the submission of briefs, Judge Davies, on July 17, 1963, entered his orders denying both motions for summary judgments and directed that both actions be tried in the federal court on the merits.

The issues raised in the motions for summary judgments were the claims that the plaintiff had been non-suited in both cases commenced in federal court under the identical fact situation and therefore, the issues were res judicata. However, the federal district court found that the notice requirements contained in the bonds, as a condition precedent to an action on the bonds, were questions of fact for determination and that if the plaintiff can establish compliance, the actions may be decided on the merits. Thereafter, the above entitled actions came on for pretrial conferences before the Honorable George S. Register, Chief Judge of the United States District Court for North Dakota. Following the pretrial conferences, Judge Register ordered the cases remanded to the state court on the ground the federal court was without jurisdiction. The order was entered on May 6, 1964, and was premised on the ground that the parties may not confer jurisdiction on the federal court by acquiescence in the removal and, in addition, that all the defendants had not been joined in the removal. The stipulation had not been signed by the bond principals although they were named as defendants. Thereafter both cases were tried in state court and judgments were entered in favor of the plaintiff on March 10, 1967. The defendant sureties have taken an appeal to this Court in the action in which Progressive Contractors, Inc., is a defendant. It appears from the files that no appeal was taken from the judgment in the case in which Wilshire Contractors, Inc., is a defendant, but that it

was stipulated and agreed between the counsel for the respective parties that the final decision in that case would be governed by the decision of this Court in the case against Progressive Contractors, Inc.

## JURISDICTION

It is the contention of the defendant sureties that a state court has no jurisdiction of the subject matter where suit is brought by a materialman on a Capehart bond. They cite in support thereof the more recent United States Courts of Appeals' decisions, from the Eighth Circuit and the Fifth Circuit, which contradict the language as interpreted in Continental Casualty Company v. United States for Use and Benefit of Robertson Lumber Company, 305 F.2d 794 (8th Cir. 1962), cert. denied, 371 U.S. 922, 83 S.Ct. 290, 9 L.Ed.2d 231; and United States for Use and Benefit of Miles Lumber Company v. Harrison and Grimshaw Construction Co., 305 F.2d 363 (10th Cir. 1962), cert. denied, 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed. 2d 229. The later cases cited were heavily relied upon by this Court in its decision in Ireland's Lumber Yard v. Progressive Contractors (N.D.1963), 122 N.W.2d 554. In the Ireland case this Court determined that the Capehart Bond Act is not controlled by the Miller Act (40 U.S.C.A. Secs. 270a and 270b(b)), and that the state district court had jurisdiction in a suit on a Capehart bond issued by sureties on a Capehart housing project. We also find that other state courts relying on the same authority arrived at the same conclusion. See Minneapolis-Honeywell R. Co. v. Terminal Const. Corp., 41 N.J. 500, 197 A.2d 557 (1964); Allsop Lumber Co. v. Continental Casualty Co., 73 N.M. 64, 385 P.2d 625 (1963); B. C. Richter Contracting Co. v. Continental Casualty Co., 230 Cal.App.2d 491, 41 Cal.Rptr. 98 (1964); and Robson v. United Pacific Insurance Company (Mo. 1965), 391 S.W.2d 855. In the last cited case it does not appear the question of jurisdiction was raised. However, it is clear that the state court of Missouri exercised jurisdiction in the suit by a subcontractor against the surety on a payment bond furnished under the Capehart Act, Title 42, U.S.C.A. Sec. 1594. We also find that at least one circuit court affirmed the decision of a district court wherein the district court held that an action against a prime contractor and its surety to recover on payment bonds for work and labor performed on Capehart housing projects was not governed by the procedural provisions of the Miller Act, and that the federal district court had jurisdiction thereon in view of a statute providing that federal district courts shall have original jurisdiction, concurrent with state courts, of any action on a bond executed under any law of the United States, under 28 U.S.C.A. Sec. 1352. See National State Bank of Newark v. Terminal Construction Corporation, 328 F.2d 315 (3rd Cir. 1964), affirming National State Bank of Newark v. Terminal Const. Corp., 217 F.Supp. 341, at 351 (D.C.N.J.1963). See also Northwest Lumber Sales, Inc. v. S. S. Silberblatt, Inc., 211 F.Supp. 749 (E.D. Mo.1962).

Paragraph 4 of the payment bond involved in the instant action provides:

"4. No suit or action shall be commenced hereunder by any claimant,

(a) * * * * *

(b) * * * * *

(c) Other than in a State court of competent jurisdiction in and for the county or other political subdivision of the State in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated and not elsewhere."

Title 42 U.S.C.A. Sec. 1594(a) (Capehart Housing Act), in part, provides:

"Any such contract shall provide for the furnishing by the contractor of a performance bond and a payment bond with

a surety or sureties satisfactory to the Secretary of Defense, or his designee, and the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of section 270a of Title 40, and no additional bonds shall be required under such section."

Section 270a of Title 40 (Miller Act) provides that performance and payment bonds shall be furnished before any contract, exceeding $2,000.00 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any such person and that such bonds shall be furnished to the United States.

Section 270b(b) of Title 40 (Miller Act), provides:

"Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, * * *."

Section 1352 of Title 28, U.S.C.A., provides:

"The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States."

The language of the various acts cited above and the bond provisions of the Capehart bonds have been the cause of much confusion in the courts.

We will now discuss the development of case law as it developed in the Eighth Circuit and referred to above as the later cases decided after Robertson.

The first case is that of Continental Casualty Co. v. Allsop Lumber Co., 336 F.2d 445 (8th Cir. 1964). The defendant sureties asserted in their appeal that the district court erred when it concluded that it had jurisdiction of the subject matter under 28 U.S.C.A. Sec. 1352, and that it had jurisdiction of the persons of those defendants who were served outside of the district in which the action was venued. The action was instituted by a subcontractor against the general contractor and surety on a payment bond issued pursuant to the Capehart Housing Act in the Western District of Missouri. Some of the defendants resided in California and service could not be obtained upon them under Missouri law. The federal district court held it had jurisdiction of the subject matter and of the persons. The circuit court, in affirming, found the federal district court had jurisdiction of the subject matter under Title 28 U.S.C.A. Sec. 1352, which we quoted above. It also found that jurisdiction over the individual defendants residing in California was acquired because the district court had extra-territorial jurisdiction for the purpose of serving the summons. It held that service in accordance with what would have been valid service in an action brought on the Miller Act, was also a valid service in an action on a Capehart bond.

The court concluded, at p. 452, that:

"If strict logic perforce demands a conclusion that this decision is but another way of saying that § 270b(b) of the Miller Act has application to a Capehart bond suit, we may be understood as going that far in our present holding."

A footnote states that the foregoing statement is made despite the implications to the contrary in Ireland, supra; Allsop Lumber Company (N.M.), supra; and Minneapolis-Honeywell R. Co. v. Terminal Const. Corp. (N.J.), supra.

The language quoted above was interpreted by the headnote writers of West Publishing Company, Headnote #6, as follows:

"[A] Section of Miller Act to effect that every suit under act shall be brought in federal district court has application to Capehart bond suit."

Two months after the Eighth Circuit's decision in Allsop was rendered, they decided Koppers Company v. Continental

Casualty Company, 337 F.2d 499 (8th Cir. 1964). Koppers Company, Inc. commenced suit in state court on a Capehart Act payment bond. The defendants removed the action to federal court on the ground that the suit was one on two bonds executed under the law of the United States within the meaning of the bond statute, 28 U.S.C.A. Sec. 1352. They then alleged, among other things, in their answer that the federal district court lacked jurisdiction over the subject matter. The circuit court on review held that the Miller Act provision applied to a suit on a Capehart Act payment bond so as to vest jurisdiction of the action exclusively in the federal court and to deny it to the state court and concluded that because the action had been commenced in state court, the removal thereof gave the federal court only derivative jurisdiction, and the state court lacking jurisdiction in the first instance, it is not brought into being by removal though the federal court would have had jurisdiction had the action originated there. For these reasons it affirmed the district court order dismissing the action.

On the same day that Koppers was handed down, the Eighth Circuit also decided Missouri-Illinois Tractor & Equipment Co. v. D & L Const. Co., 337 F.2d 507 (8th Cir. 1964). In this case the court held that an action on a Capehart Act payment bond brought by a subcontractor-supplier was controlled by the limitations set forth in the Miller Act to one year after the day on which the last labor was performed or material furnished, rather than the period of one year following the date on which the prime contractor ceased work as provided in the bond. In other words, the limitation period provided in the Miller Act governed over the limitation period provided in the Capehart bond.

A review of the four decisions rendered by the Eighth Circuit discloses their holdings to be as follows:

1. The dual notice requirement of a Capehart bond, being more stringent than the notice provisions of the Miller Act, is valid and effective. Continental Casualty Company v. United States, for Use and Benefit of Robertson Lumber Company, supra.

2. The proper federal court has jurisdiction under Title 28, U.S.C.A. Sec. 1352, over an action on a Capehart bond. Robertson, supra; Allsop, supra; Koppers, supra; and Missouri-Illinois Tractor & Equipment Co., supra.

3. Section 2(b) of the Miller Act, 40 U.S.C.A., Sec. 270b(b) has application to a Capehart bond action and vests jurisdiction over that action exclusively in the federal court. Koppers, supra; and Missouri-Illinois Tractor & Equipment Co., supra.

4. The limitation period set forth in Section 2(b) of the Miller Act is applicable despite the presence of a specified longer period in the bond itself. Missouri-Illinois Tractor & Equipment Co., supra.

The Fifth Circuit has also held in two cases that the federal courts have jurisdiction of an action brought on a Capehart housing bond under the Miller Act, although the bonds were not executed under that Act but under the Capehart Act, and that the federal courts also have jurisdiction under the statute providing that district courts have original jurisdiction concurrent with the state courts in an action on a bond executed under any of the laws of the United States. See Lasley v. United States for Use of Westerman, 285 F.2d 98 (5th Cir. 1960), and Autrey v. Williams and Dunlap, 343 F.2d 730 (5th Cir. 1965).

Standing contrary to the holdings of the circuit courts of the Fifth and Eighth Circuits are two older circuit court decisions; one from the Third Circuit and the other from the Tenth Circuit. The first case is United States for Use and Benefit of Miles Lumber Company v. Harrison and Grimshaw Construction Co., supra, from the Tenth Circuit, which we refer to and quote from in Ireland. The second case is National State Bank of Newark v. Terminal

Const. Corp., supra, in which judgment was affirmed without opinion at 328 F.2d 315 (3rd Cir. 1964). This was an action against a prime contractor and its surety to recover on payment bonds for work and labor performed on a Capehart housing project. The district court held, the circuit court affirming, that a Capehart bond is issued under the laws of the United States and the federal district court has jurisdiction thereon in view of the statute providing that the district courts shall have original jurisdiction concurrent with state courts of any action on bonds executed under any law of the United States, as provided by 28 U.S.C.A. Sec. 1352. The court, in analyzing the various statutes, concluded that a bond given under the Capehart Act does not fall within the scope of the Miller Act. We have been unable to find that the question has been passed upon by the United States Supreme Court and the decisions of the United States Circuit Courts are in conflict.

■ Where there is a conflict between the decisions of the lower federal courts on federal questions the state courts are generally free to decide the questions for themselves.

"Decisions of the lower federal courts on federal questions which have not been passed on by the supreme court of the United States should, according to some authorities, be followed by the state courts, although it has also been considered that such decisions, while persuasive, are not binding on the state courts, and a conflict between decisions of the federal courts certainly leaves the state courts free to decide the question for themselves."

21 C.J.S. Courts § 206, p. 377.

"On principle, it would seem that where the highest federal authority on a question of federal law is not represented by an opinion of the United States Supreme Court but by a decision of a lower federal court, especially a federal Court of Appeals, a state court should be bound in the same way it is bound by an opinion of the United States Supreme Court. There is, however, a conflict of opinion on this point in the cases. Some seem to be in line with the foregoing proposition. In others the opposite position has been taken by holding that a state court is not bound by decisions of a federal court other than the United States Supreme Court, even though a federal question is involved. And some state courts have carefully refrained from taking any position on the question of their duty to follow on a federal question a decision of a federal court other than the United States Supreme Court."

20 Am.Jur.2d Courts, Sec. 230, p. 560.

This action is brought on a performance and payment bond executed in compliance with Title 42 U.S.C.A. Sec. 1594(a), otherwise known as the Capehart Act. The Capehart Act was passed by Congress in 1955 as Public Law 84-345. It was amended in 1956, Public Law 84-1020, and is now codified as Title 42 U.S.C.A. Sec. 1594.

The purpose of the Capehart Act, its application and history, is well described in Continental Casualty Company v. United States for Use and Benefit of Robertson Lumber Company, supra, 305 F.2d at pp. 797-798, as follows:

"The purpose of the Capehart Act was to provide urgently needed housing for military personnel on Government property, and while Capehart housing is undoubtedly 'Government housing,' Capehart construction differs from conventional Government construction in certain significant respects.

"Ordinarily, federal public works are paid for both initially and finally with federal funds. Capehart housing, on the other hand, initially is built and financed by private capital, although loans made by financial institutions to finance the construction are fully insured by the Federal Housing Administration. Both the Department of Defense and the Federal Housing Administration are concerned

with the administration of the Capehart program, and the Federal Housing Commissioner has been authorized to promulgate regulations concerning the program, 12 U.S.C.A. § 1748f, which authority has been exercised, see 24 C.F.R. Part 292a.

"The Capehart Act now requires both payment and performance bonds, and standard forms of those bonds have been worked out by the Department of Defense and the Federal Housing Administration, and all Capehart housing contracts call for the giving of those particular bonds, as was done in this case.

"With some allowance for possible over-simplification, a typical Capehart project may be described substantially as follows:

"A building contractor desiring to build Capehart housing and who has been the successful bidder for such housing, and who has made satisfactory arrangements to secure private financing, forms a corporation to take a long term lease on the Government property on which the housing is to be constructed and to execute a mortgage on the leasehold estate to the financial institution which is to lend the money required for construction purposes. This corporation, which is at all times under complete Government control, does not do the actual building of the housing units. That is done by the contractor under contract with the Government and with the corporation. The functions of the corporation are limited and to some extent nominal. It takes the lease and executes the mortgage and is a party to the construction contract. Further, it is one of the obligees named in the contractor's performance and payment bonds. In the statute, regulations, and contract documents the contractor is called the 'eligible bidder,' the corporation is called the 'mortgagor-builder,' and the lending agency is called the 'mortgagee.'

"As the project is completed, the housing units are turned over to and operated by the Government and are occupied by military personnel. Quarters allowances previously paid to such personnel are retained by the Government and used to pay off the mortgage. When the mortgage is finally retired, the lease to the 'mortgagor-builder' is terminated, and that corporation is dissolved, leaving title to the housing in the Government.

"The contractor derives his profit from doing the actual building of the housing. From the Government's standpoint, advantages are seen in that federal funds are not expended for initial construction and, while the housing will be paid for eventually with federal money, that money would have been expended in any event as quarters allowances for the affected service personnel. In addition, the program may be supposed to provide a stimulus for private industry and capital."

See also United States for Use and Benefit of Miles Lumber Company v. Harrison and Grimshaw Construction Co., supra, 305 F.2d at pp. 365–366, for a similar explanation of the Act; it states:

"The Capehart Act amends Title VIII, 'Armed Services Housing Mortgage Insurance,' of the National Housing Act. The purpose of the amendments was to provide 'the most practicable means of coping with the very serious housing problem * * * facing our military services.' While conceding the advantages of the use of appropriated funds, Congress 'recognized that budgetary considerations would not permit the expenditure in 1 or 2 fiscal years of the sums needed,' and accordingly provided for 'the utilization of private mortgage capital to be repaid from quarters allowances of eligible service personnel.'

"The statutory plan calls for construction by private entities with private funds advanced on the security of mortgages covering the housing to be constructed. The Federal Housing Administration insures the payment of the mortgages. Eligibility for such insurance requires that the mortgaged property be held by a

mortgagor approved by the Commissioner of the Housing Administration who may regulate the capital structure and methods of operation and may acquire, for not more than $100, stock or interest in the mortgagor.

"Each housing unit is placed under the control of the Secretary of Defense 'as soon as the unit is available for occupancy as determined by the Commissioner' and when the housing project is completed, the capital stock of the mortgagor, except that held by the Commissioner, is transferred to the Secretary of Defense, who uses appropriations for quarters allowances to pay the mortgage."

The standard form of bonds, approved by the Department of Defense and the Federal Housing Administration, is the form used in the instant action. It provides in part:

"4. No suit or action shall be commenced hereunder by any claimant,

(a) * * * * *

(b) * * * * *

(c) Other than in a State court of competent jurisdiction in and for the county or other political subdivision of the State in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated and not elsewhere."

The Miller Act was adopted in 1935 and covers Government buildings and works generally. Section 270a of Title 40 U.S.C.A., which is a part of the Miller Act, requires the giving of performance and payment bonds by contractors engaged in the construction, alteration or repair of any "public building or public work of the United States" where the amount of the contract exceeds $2,000.00. Section 270b(b) of Title 40 U.S.C.A., provides:

"Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, * * *."

The original 1955 Capehart Act contained no provision requiring a bond and the Miller Act bond provision was generally applied. However, in 1956, Congress, by amendment of the Capehart Act, provided that a payment and performance bond satisfactory to the Secretary of Defense or his designee was required. The amendment has caused the confusion in the federal courts. However, in our interpretation of the intent of Congress in adopting this amendment, we agree with the statement contained in Continental Casualty Company v. United States for Use and Benefit of Robertson Lumber Company, supra, wherein it is stated at pp. 799–800 of 305 F.2d:

" * * * we are of the opinion that when Congress amended the Capehart Act in 1956 it recognized that Capehart housing is not conventional Government construction, that the private construction and financing of Capehart housing and the joint administration of the Capehart program by the Department of Defense and the Federal Housing Administration presented problems not encountered in ordinary Government construction, and that it intended, as far as bond protection for laborers and materialmen is concerned, to treat Capehart housing as *sui generis*. While we think that Congress intended that Capehart suppliers should have substantive bond protection essentially similar to that afforded Miller Act suppliers, we think also that Congress intended that the procedural provisions of Capehart bonds should be worked out and prescribed by the two agencies involved in the light of the unique nature of Capehart construction and of the peculiar problems which might be encountered in connection with such construction. In our estimation had Congress intended for the procedural provisions of the Miller Act to apply to

Capehart contractors and their sureties it simply would have said so.

"The interpretation which we place upon the 1956 amendment to the Act is in harmony with the administrative interpretation which has been placed upon it by the agencies charged with the implementation of the Capehart program. This is evidenced by the fact that the notice provisions in question, and certain other procedural provisions which differ from the procedural provisions of the Miller Act, were inserted in the bond forms by the agencies themselves. It is settled, of course, that in the case of an ambiguous statute, and the 1956 amendment is ambiguous, the interpretation placed upon it by the agencies charged with its enforcement is entitled to great weight.

"It may be argued plausibly that there should be general uniformity in the procedure required to be followed by Capehart suppliers on the one hand and Miller Act suppliers on the other. But, bearing in mind the differences between Capehart housing and more familiar types of Government construction, we do not know that absolute procedural uniformity is practicable, just, or desirable. Presumably, the agencies had some valid reason for prescribing dual notice as a condition precedent to action on a Capehart bond, although the record before us does not establish affirmatively what that reason was.

"The view which we take of the case renders it unnecessary for us to pass upon appellant's alternative contention that in any event its liability must be measured by the terms of the bond as written regardless of whether those terms should have been inserted in the bond. While United States for Use of W. B. Young Supply Co. v. Stewart, 8 Cir., 288 F. 187, the principal case cited by appellant in support of its alternative position, may be distinguished from the instant case, and while other relevant authorities appear to be in conflict, the alternative

contention is by no means frivolous in the circumstances here present. But, be that as it may, it is to be remembered that the only section of the Miller Act referred to in the Capehart Act is the section which requires the giving of a bond; and when Congress said in the Capehart Act that the giving of a bond satisfactory to the Secretary of Defense or his designee should constitute compliance with the section of the Miller Act which requires that a bond be given, we think that the clear import of the language used was to take Capehart bonds entirely out of the Miller Act."

We also agree with what is said in United States for Use and Benefit of Miles Lumber Company v. Harrison and Grimshaw Construction Co., supra, wherein they stated, at p. 366 of 305 F.2d:

"We are confronted here with a situation in which the project is built by a private entity with private funds at private risk. The property is encumbered by a mortgage given by a private mortgagor to a private mortgagee."

And, at pp. 367–368:

"The seriousness of the problem compels us to pursue the question further. We are convinced that in any event Congress did not intend that the Capehart Act performance and payment bonds, and suits thereon, should be governed by the Miller Act.

"The Capehart Act as passed in 1955 contained no provision for a bond. This was added by a 1956 amendment which reads:

'Any such contract shall provide for the furnishing by the contractor of a performance bond and a payment bond with a surety or sureties satisfactory to the Secretary of Defense, or his designee, and the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of section 1 of the Act of August 24, 1935 (49 Stat. 793) [Miller Act], and no addi-

tional bonds shall be required under such section.'

"By this amendment Congress recognized the peculiar characteristics of a Capehart Act military housing project. Congress provided for performance and payment bonds with sureties satisfactory to the government and said that the furnishing of such bonds was a sufficient compliance with the Miller Act. It did not say that the provisions of the Miller Act apply to such bonds.

\* \* \* \* \* \*

" \* \* \* Congress realized the unusual situation created by the Capehart Act. The projects are of a private nature until completion and assumption of control by the government. The mortgagor-builder has a contract with a construction company to build the project. The constructor looks to the mortgagor-builder for payment for his work and owes to the mortgagor-builder the obligation to perform. The ownership of $100 worth of stock of the mortgagor-builder by the Commissioner does not make the United States either the owner or the paymaster. A rational approach to the problem requires that an obligee in the performance bond be the entity which owns the project and is in a position to enforce the construction contract.

"Contemporaneous administrative construction aids us in the resolution of any doubts as to the congressional intent. Less than a month after the 1956 amendment became law, the Federal Housing Administration adopted the regulation found at 24 C.F.R. § 292a.27 which, under the heading 'Armed Services Housing Insurance; Eligibility Requirements of Mortgage,' reads:

'Assurance for the completion of a project shall be a performance bond and a payment bond satisfactory to the Commissioner and the Secretary of Defense or his designee with the mortgagor and mortgagee as joint obligees.'

"The naming of the mortgagor and mortgagee as joint obligees is a significant departure from a Miller Act bond in which the obligee is the United States and points up the private nature of the project."

And, at pp. 368–369:

"We are aware of the rule that the Miller Act is to be liberally construed to accomplish its purpose of protecting those who furnish labor and material in the performance of contracts for the construction of public works, but that rule has no application here. We are concerned with a Capehart Act project bond and we are convinced that the Miller Act has no application to such a bond."

▆▆ Because we do not believe that Congress intended that Capehart bonds shall be governed by the Miller Act, we find jurisdiction in the state court under Section 1352 of Title 28, U.S.C.A., which provides:

"The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States."

It has often been said that hard cases make bad law. We think this is the situation that arose in the federal court of the Eighth Circuit as reported in Continental Casualty Company v. Allsop Lumber Company, supra, where it was necessary to rule that the federal court had extra-territorial jurisdiction for the purpose of service of a summons upon non-resident defendants. Had a similar situation arisen in North Dakota, we would not have been faced with the same problem under our long-arm rule. See 501 DeMers, Inc. v. Fink (N.D.), 148 N.W.2d 820.

We think a letter presented at the hearings before the House Committee on Banking and Currency, 84th Congress, Second Session, 195–96 (1956) on H.R. 10157, which bill ultimately became a part of Title 42 U.S.C.A. Sec. 1594 (Capehart Housing Act), is of considerable significance al-

though the Eighth Circuit Court apparently did not think so when they decided Koppers, supra. The letter is dated June 4, 1956, and was from the Director, Legislative Programs, Office of the Assistant Secretary of Defense. It states:

> *"It is also recommended that H.R. 10157 be amended to make it clear that the provisions of the Miller Act (40 U.S. C. 270a) are not applicable to title VIII housing.* It appears more appropriate to provide for use of the FHA dual obligee bond form for both performance and payment bonds. The cost of the FHA bond is substantially less than the cost of bonds required by the Miller Act for public works so that the proposed amendment will serve to decrease the cost of construction and otherwise facilitate contractual relationships. Accordingly, it is suggested that the following amendment be added to the bill:

> 'Section 403(a) of the Housing Amendments of 1955 is amended by adding before the final sentence thereof the following: "Any such contract shall provide for the furnishing by the Contractor of a performance bond and a payment bond with a surety or sureties satisfactory to the Commissioner and the Secretary of Defense, or their designees, and the furnishing of such bonds shall be deemed sufficient compliance with the provisions of section 1 of the Act of August 24, 1935, and no additional bonds will be required under such section,".' " [Emphasis added.]

Congress must have agreed. It enacted the amendment proposed with only one change (omitted the Commissioner), August 7, 1956, C. 1029, Sec. 507, 70 Stat. 1110. Congressional intent is rarely better documented.

The various conflicting opinions of the lower federal courts, we believe, have brought about a chaotic condition and, thus, in the absence of a United States Supreme Court decision holding that the federal court has exclusive jurisdiction in Capehart bond suits, we adhere to our decision in Ireland in which we held the state court has jurisdiction.

## IS THE MATTER RES JUDICATA?

The defendant sureties argued in the trial court, and again in this Court, that the matter is res judicata by virtue of the decision in Continental Casualty Co. v. United States for Use and Benefit of Robertson Lumber Company, 305 F.2d 794 (8th Cir. 1962), cert denied, 371 U.S. 922, 83 S.Ct. 290, 9 L.Ed.2d 231.

■ The affirmative defense of res judicata was not raised by answer as required by Rule 12(b), N.D.R.Civ.P. However, the defense was not available at the time the answer was required but was presented during the trial. It was decided by the trial court. It appears that no objections were made and we must assume the issue was tried by the implied consent of the parties to the action, and therefore must be treated in all respects as if it had been raised in the pleadings. Rule 15(b), N.D.R.Civ.P. This is in harmony with the general rule. 30A Am.Jur. Judgments, Sec. 440.

The state action was commenced in April 1961, while the federal action was pending on appeal in the circuit court. The state action was removed to federal court and after the decision in Robertson, supra, the defendants moved for a summary judgment of dismissal of the state action after removal on the ground that the matter was res judicata. This motion was denied by the federal district judge. Later, the case was returned to state court, as indicated earlier in this opinion, and when the matter came on for trial in the state court the defense of res judicata was again presented by argument and rejected by the state trial judge. The state trial court found the issues in the action were not tried on the merits in the federal court and therefore the matter was not res judicata.

■ We agree with the decision of the trial court. The first action was commenced

in federal court in December 1960. It was brought under the Miller Act. At that time the only decision reaching a circuit court of appeals was that of Lasley v. United States for Use of Westerman, 285 F.2d 98 (5th Cir. 1960). That case held, in the alternative, that the federal district court had jurisdiction of the action under the Miller Act, though the bonds were executed under the Capehart Act, and that the district court had jurisdiction also under 28 U.S.C. A. Sec. 1352, providing that district courts have original jurisdiction concurrent with the state courts on a bond executed under any law of the United States. In the pretrial conference in the federal district court, it was admitted by the defendants that the plaintiff was proceeding under the Miller Act, and this is further evidenced by the fact that the action was entitled United States of America for the use and benefit of the Robertson Lumber Company, a corporation, as plaintiff.

At a pretrial conference, the parties submitted, for the determination of the federal district court, a legal question. The question was stipulated into the record as follows:

"That the question of law involved is whether or not the procedures used by the use-plaintiff which satisfy the requirements of the Miller Act are sufficient to give a right of recovery under the bond."

It was also agreed that there was a failure of notice under the provisions of the bond at the time of the pretrial conference. This stipulation was framed as follows:

"It is admitted that there is a failure of notice under the provisions of the bond in this case at this time."

Following the pretrial conference, the trial court made its decision. It is reported as United States for Use and Benefit of Robertson Lumber Company v. Progressive Contractors, Inc., D.C., 196 F.Supp. 171, decided May 24, 1961. The court held the plaintiff had the right to sue these defen-

dants under the Capehart bonds, even though the notice requirements of the bonds had not been met, where the notice requirements of the Miller Act had been complied with. This decision was appealed to the Eighth Circuit Court and decided in Robertson, supra, June 30, 1962. The circuit court reversed the district court and remanded the cause, with directions to dismiss the complaint.

In its opinion, the circuit court refers to a summary judgment having been rendered by the district court in favor of this plaintiff. We note that the district court, in its opinion, made no reference to a summary judgment and no summary judgment has been produced in this Court. We think rather that the district court entered a pretrial order on a question of law. However, it is unimportant whether a summary judgment was entered or not, as the circuit court reversed the "judgment appealed from". It did not direct the entry of a judgment in favor of the defendants, however; it merely directed a dismissal of the complaint. In view of the record made in the district court we interpret the circuit court opinion in Robertson as directing a dismissal of the complaint on the ground that it does not state a claim upon which relief can be granted under the Miller Act and is not an adjudication of the issues upon the merits.

We note the federal district court so interpreted Robertson in the same way when it denied a motion for summary judgment in the second case, which was commenced in the state court and removed to the federal court, while the first action was pending in the circuit court. In its order denying the motion for summary judgment made upon the grounds that the issues were res judicata, after the decision in Robertson, the federal district court stated as follows:

"An action was previously commenced in this Court on the bonds after the Plaintiff had served notice on the Defendants pursuant to the procedural requirements of the Miller Act, 40 U.S.C.A. Secs. 270a–270d. These notices concededly were not

in compliance with the notice requirements contained in the bonds.

"This Court held such notice sufficient for the Plaintiff to maintain the action, United States v. Progressive Contractors, Inc., 196 F.Supp. 171; but the Court of Appeals reversed sub nom, Continental Casualty Company v. United States, 305 F.2d 794, holding that the procedural provisions of the Miller Act do not apply to Capehart contracts and their sureties, and that compliance with the notice provisions contained in the bonds is a condition precedent to an action on the bonds. Pursuant to the mandate of the Eighth Circuit, the complaint was then dismissed.

"While the appeal was pending in United States v. Progressive Contractors, Inc., supra, the Plaintiff commenced the instant actions in State Court, alleging that written notice had been given the Defendants as required by the notice provisions contained in the bonds. The cases were removed to this Court and, after the decision of the Eighth Circuit in Continental Casualty Company v. United States, 305 F.2d 794, the Defendant sureties have moved for summary judgment on the grounds that 'The question raised in the Complaint[s] have been determined and the Plaintiff has been non-suited in both cases under the identical fact situation and therefore the issues here are res adjudicata [sic].'

"The holding in Continental Casualty Company v. United States, supra, is that the notice requirements contained in the bonds are a condition precedent to an action on the bonds, and it, therefore, follows that if the Plaintiff can establish compliance, the instant actions may be decided on the merits. Questions of fact for determination are whether the notices were adequate in form and substance, timely, and given to the proper parties."

We also think our finding is supported by what is said in the later Eighth Circuit case of Continental Casualty Co. v. Allsop

Lumber Co., 336 F.2d 445, wherein the court stated at p. 451:

"The only issue before this court in Robertson was whether the dual notice provisions of that Capehart bond, which were more stringent than those of the Miller Act, 40 U.S.C. § 270b(a), had to be met in order to bind the surety. We held that those notice provisions governed."

Thus we believe the decision was based on the sole ground that the plaintiff could not recover under the provisions of the Miller Act insofar as the notice requirements were concerned. No effort was made in that case to prove compliance with the notice provisions of the bond. The sole issue was whether the notice provisions of the Miller Act were applicable. Thus it appears the federal court did not decide whether the plaintiff had complied with the notice provisions of the bond or whether compliance with the notice provisions of the bond was a condition precedent to suit on the bond. This has been made an issue in the action now before us and we must determine it on the basis of the record. We find there is no federal adjudication of the issue of whether the plaintiff has complied with the notice requirements of the bond, or whether notice must be given to the surety.

■ The burden is upon the defendants to establish the defense of res judicata. Knutson v. Ekren, 72 N.D. 118, 5 N.W.2d 74; Borden v. McNamara, 20 N.D. 225, 127 N.W. 104; 30A Am.Jur. Judgments, Sec. 466; 50 C.J.S. Judgments § 837.

■ The term "res judicata" means a thing or matter that has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction. Knutson v. Ekren, supra.

"The doctrine of res judicata as stated in many cases is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights,

questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction."

30A Am.Jur. Judgments, Sec. 324.

■ The sureties invoked the rule that the doctrine of res judicata covers those things which might have been litigated as well as those that were actually litigated. They cite in support thereof Phoenix Finance Corporation v. Iowa-Wisconsin B. Co., 115 F.2d 1, 139 A.L.R. 1490 (8th Cir.). This is the general rule. See also 30A Am. Jur. Judgments, Sec. 372. However, the rule has its limitations, stated in American Jurisprudence, as follows:

"This rule applies to every question falling within the purview of the original action, in respect to matters of both claim and defense which could have been presented by the exercise of due diligence."

■ As we view the decision of the circuit court in Robertson it was not rendered upon the merits but only upon the question of law which it decided to the effect that the more stringent provisions of the Capehart housing bond prevailed over the less stringent notice provisions of the Miller Act and therefore the complaint did not state a claim under the Miller Act. It is also the rule that a decision rendered on any ground which does not involve the merits of the action may not be used as a basis for the operation of the doctrine of res judicata. See 30A Am. Jur. Judgments, Sec. 347. The issue presented at the pretrial conference to the federal district court by the pleadings and the stipulation of facts was purposely limited to show a compliance with the notice provisions of the Miller Act.

Subsequent thereto, and long before the decision in Robertson was rendered, plaintiff contends that proper notice was given under the terms of the Capehart bond as shown by stipulation entered into between the parties to this action on April 12, 1963, and made a part of the record in this case.

"A judgment on the merits is said to be one which is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form, or is a judgment that determines, on an issue either of law or fact, which party is right."

30A Am.Jur. Judgments, Sec. 348.

However,

"The doctrine of res judicata is not available as a bar to a subsequent action if the judgment in the former action was rendered because of a misconception of the remedy available or of the proper form of proceeding."

30A Am.Jur. Judgments, Sec. 349.

It appears clear that the purpose of the question presented for decision by the federal courts was to determine whether or not the remedy available under the Miller Act was applicable to a Capehart bond. The circuit court held that it was not and ordered the complaint dismissed. It appears to us that the circuit court decision is final in only one respect, and that is, that in a suit on a Capehart bond the more stringent notice provisions of the Capehart bond prevail over the less stringent notice provisions of the Miller Act. The matter was not determined on its merits and we therefore decide it is not res judicata. We will not, however, apply the notice provisions of the Miller Act in our determination of the issues.

## NOTICE AND PREJUDICE

It is the contention of the defendant sureties that even if it is found that the state court has jurisdiction and that the case is not res judicata, nevertheless the plaintiff did not give notice in accordance with the provisions contained in the bond and it is not therefore entitled to recover. This argument is resisted by the plaintiff. Both parties cite Ireland in their arguments.

The defendant sureties contend Ireland is applicable only where the plaintiff gave

timely dual notices as provided by the bond conditions, and that if the amount was incorrectly stated in such notices, the sureties will be exonerated to the extent they were prejudiced by the omission.

The plaintiff contends Ireland is applicable in this case because it holds that no notice need be given to the sureties by the claimant to maintain a suit against the sureties.

■ We believe our holding in Ireland is clear. Syllabus #5 states the controlling points adjudicated in that case on this question. It states as follows:

"5. Where payment bond prescribes notice of claim shall be given within specified period to any two of the following: 'The Principal, any one of the Obligees, or the sureties' as a condition precedent to suit on the bond by a claimant against the sureties, it does not require any notice be given to the sureties, and where claimant fails to give timely notice to any of the persons named in the bond and brings suit on the bond against the sureties, the sureties are exonerated only to the extent to which they are prejudiced by the omission. Section 22–03–06, N.D.C.C."

In other words, by this Syllabus, we held as follows:

1. The notice requirements of the bond can be satisfied by giving notice to the principal (the contractor) and the obligees (the mortgagor-builder and the lender) without any notice whatever being given to the surety.

2. That no notice need be given the surety as a condition precedent to suit against the surety on the bond.

3. That where the claimant fails to give timely notice, to anyone, the surety will be exonerated only to the extent to which it is prejudiced by the omission.

In Ireland, dual notices were given within the 90-day period provided by the bond. However, the notice did not comply with the bond requirement that it should state, with substantial accuracy, the amount claimed. In Ireland, a second notice which was not timely included an additional amount claimed for materials furnished which was substantial. Part 4 of the bond provides:

"4. No suit or action shall be commenced hereunder by any claimant,

(a) Unless claimant shall have given written notice to any two of the following: The Principal, any one of the Obligees, or the Sureties above named, before the expiration of the period referred to in condition 2 above, stating with substantial accuracy the amount claimed * * *"

In Ireland, the timely notice claimed the amount of $1,677.34 to be due, but in the second notice, which was not timely, an additional charge in the amount of $8,045.69 was added. Thus it is clear the timely notice given did not state the amount with substantial accuracy. Thus the notice provision of the bond in Ireland was not complied with. In Ireland, 122 N.W.2d at page 566, we said:

"* * * A breach of such an obligation should not release the surety from liability but should exonerate him only to the extent to which he is prejudiced by the failure of the claimant to give the required notice, if any. Section 22–03–06, * * *" [N.D.C.C.]

This section provides that a surety is exonerated only:

"4. To the extent to which he is prejudiced by an omission of the creditor to do anything when required by the surety which it is his duty to do."

We find this case and Ireland are quite parallel. In Ireland, timely dual notices were given but did not state the amount with substantial accuracy. In the case before us a single timely notice was given stating the amount with substantial accuracy. Corrected notices were given in both cases which were not timely. Thus in both cases the notice provisions of the bonds were not completely complied with. No fraud or dishonesty is shown in either case.

Suit was brought within the one-year period as provided by the bond in both cases. Any obligation placed upon the plaintiff, under the terms of the bond, was not broken until the loss had already occurred in both cases. The indebtedness in each case was fixed and did not increase in amount as the contractor abandoned the project on May 20, 1960, and as a result of the abandonment no further materials were furnished.

In Ireland, we granted a new trial " * * * because the issue on the question of prejudice to the sureties was not litigated in the lower court, * * *." However, the sureties in this case, taking a cue from Ireland, have litigated this issue and introduced evidence in support of it. The defendant Progressive Contractors was a Hayes subsidiary. The record establishes that the defendant Continental Casualty Company had knowledge of the abandonment of this and a number of other Hayes projects in May of 1960. As a result, the defendant Continental assigned five men to investigate its possible exposure. In addition it sent claim men to all of the principal Hayes subsidiary job locations. It also is established that a representative of Continental called at the office of the attorneys for the plaintiff in this case in July 1960, after the project was abandoned. These attorneys gave notice on behalf of the plaintiff to Progressive Contractors on July 22, 1960, which notice, it is stipulated, was given within 90 days from the date on which the last materials were furnished. It is clear in this case that the sureties were fully, timely, and substantially advised of the plaintiff's claim. A claimant is defined by the bond terms " * * * as one having a direct contract with the Principal or with a subcontractor of the Principal who has furnished labor, material, or both, in the prosecution of the work provided for in the Contract and who has not been paid in full therefor."

■ The plaintiff's right of action on the bond as a supplier of materials to a subcontractor is not conditioned on giving notice to the bond principal (contractor) as in Miller Act cases. We have examined the evidence in this case and find that it does not support a claim that the sureties were prejudiced by failure to give timely dual notice as provided by the bond terms. They have failed in their burden of proof to show prejudice by any omission of the plaintiff to do anything required by the creditor (plaintiff) which it was its duty to do.

■ We find no statutory provisions under North Dakota law requiring that notice be given to a surety as a condition precedent to the commencement of an action on a suretyship bond. We find that the bond itself does not require that notice be given to the surety as a condition precedent to suit. In addition, it appears generally to be the law that in the absence of a statute to the contrary or provisions in the contract so requiring, notice of default need not be given to the sureties before suit.

"An owner's failure to give notice to the surety of the principal's default does not discharge the surety unless the bond specifically provides for such notice.

"A provision to give notice of default is, of course, valid provided it is reasonable, and is a condition precedent to an action so based. Where no time is specified as to the giving of notice of default, it must be given within a reasonable time under all the circumstances. If, on the other hand, the surety already has knowledge or is chargeable with knowledge of the default, a failure to give the notice required by the bond does not relieve it from liability. Moreover, there is authority that even where the bond requires it, notice of default is unnecessary where the contractor completely abandons the contract."

17 Am.Jur.2d Contractor's Bonds, Sec. 30, p. 212.

"Inasmuch as the creditor owes no duty of active diligence to take care of the interest of the surety, his mere failure voluntarily to give information to the surety of the default of the principal cannot have the effect of discharging the surety. The surety is bound to take no-

tice of the principal's default and to perform the obligation. He cannot complain that the creditor has not notified him, in the absence of a special agreement to that effect in the contract of suretyship. * * *"

50 Am.Jur. Suretyship, Sec. 42, p. 933.

"In the absence of a statute to the contrary or provisions in the contract so requiring, notice of the default of the principal need not be given to the sureties before they can be sued on the obligations, even though the rules and by-laws of the obligee require such information to be given to them, or the sureties are injured by lack of it, since it is their duty to make inquiry and ascertain whether the principal is discharging the obligation resting on him. * * *"

72 C.J.S. Principal and Surety § 253, p. 702.

"Unless there is some agreement as to notice, the creditor is under no duty to the surety to notify the latter of the principal's default. His failure to notify the surety does not result in the latter's discharge. * * *"

Stearns, Law of Suretyship, Sec. 6.1, p. 106.

We have not overlooked United States for Use and Benefit of Robertson Lumber Company v. Cedric Sanders Company, 223 F.Supp. 435 (D.N.D.N.W.Div. 1963), in which the court dismissed the complaint in an action on a Capehart bond because it showed a failure to have complied with the dual notice provisions of the Capehart bond. This case follows Robertson and holds that such failure precludes a recovery on the bond. It also attempts to distinguish Ireland. We do not agree with this decision. We decided Ireland after Robertson and did not then, nor do we now, accept it as a correct statement of the law that the complaint must be dismissed because the notice provisions of the Capehart bond were not complied with. To require the giving of notice pursuant to the bond terms, as a condition precedent to an action on the bond against the surety when notice is not required to be given to the surety, would be an idle act and the law does not require the performance of idle acts. Section 31–11–05(23), N.D.C.C.

For the reasons aforesaid, we affirm the judgment.

KNUDSON, PAULSON, ERICKSTAD and STRUTZ, JJ., concur.