[File No. 6843.]

ARTHUR O. KNUTSON and Theodore O. Knutson, Appellants, v. OSCAR EKREN, Respondent.

(5 NW(2d) 74.)

Opinion filed August 4, 1942.

*Bangs, Hamilton & Bangs,* for appellants.

*Day, Lundberg & Stokes,* for respondent.

BURR, Ch. J.  Plaintiffs seek to recover on fifteen causes of action. Thirteen of these are predicated upon promissory notes.  The fourteenth is based upon the payment of real estate taxes; and the fifteenth is a claim for gasoline and oils furnished to the defendant.

As one of the defenses, defendant alleged that all of the issues involved were fully heard and determined in a former action; that judgment was rendered in defendant's favor; and the judgment has never been set aside, modified, or revised.

A jury was impanelled, and after both sides rested defendant moved to dismiss the action.   The evidence shows issues to be submitted to a jury if the defense of res judicata failed.   The motion was granted over the protest of the plaintiffs, the sole ground being that all of the issues had been fully adjudicated in this former action.   Judgment of dismissal was entered and the plaintiffs appeal.

On October 25, 1939, Oscar Ekren and Alfred, his brother, commenced an action against the Knutsons and the Northwest Finance Corporation, to determine adverse claims to real property, the complaint being in statutory form.   The Ekrens claimed that they (together with their brother, Palmer, who was not a party to the action) were the owners of the SW 1-4 of section 12, township 150, range 50. They also claimed that Oscar Ekren was the owner of the East half of said quarter, by reason of a quitclaim deed given to him by his two brothers, Palmer and Alfred.   They demanded that the defendants be required to set forth their adverse claims; that these claims be adjudged null and void; and that title be quieted in the Ekrens.

The defendants answered jointly and alleged:  that Alfred Ekren was the owner of the W 1-2 of the quarter and Oscar Ekren was the

owner of the E 1-2 of the quarter and that Palmer Ekren had no interest in the land whatever; that Alfred Ekren gave to the Northwest Finance Corporation a quitclaim deed to the W 1-2 of the SW 1-4 as security for the payment of ten of the notes upon which the plaintiffs in this case predicate their cause of action; for feed, oats, barley and wheat furnished to him; and for his share of the taxes on the NW 1-4 of land which had been paid by the corporation, and further, that Alfred Ekren gave the Knutsons his promissory note for $896 and to secure the payment of this note he had executed and delivered to the Knutsons a real estate mortgage on the W 1-2 of the quarter.

With reference to Oscar Ekren the defendants alleged that Oscar and his wife gave to the Knutsons their promissory note in the sum of $486 ($486.98), and as security for payment thereof, gave a real estate mortgage on the E 1-2 of the quarter and that no part of said note and mortgage had been paid. This note is not involved in the case at bar. Defendants also alleged that Oscar Ekren and his wife executed and delivered to the Knutsons a quitclaim deed to the E 1-2 of the SW 1-4 as security for the payment of thirteen promissory notes and two claims set forth and described in the answer. (These are the thirteen notes and claims on which the plaintiffs seek to recover in the present action.) The claims show that Oscar Ekren was indebted to the Knutsons for his share of the 1938 taxes, paid by them, and for gasoline, kerosene and oil, which they furnished to him. These claims are the claims set forth in the fourteenth and fifteenth causes of action.

In the prayer for relief defendants ask "that their rights, interests, liens and claims—be determined—be declared and decreed to be valid and subsisting liens—to and against the property aforesaid, and that whatever right, title or interest the Plaintiffs (the Ekrens) have in and to said property—be declared and decreed to be subject to the liens— and that said Defendants and each of them have such other and further relief as may be just and equitable, together with their costs and disbursements herein incurred."

Oscar Ekren replied, alleging, among other things; that if he and his wife signed the quitclaim deed "the signature thereto was obtained without consideration by fraudulent means" and without his knowledge. He admitted the taxes were paid but said they were paid without any

request on his part. He admitted that he owed for the gasoline, kerosene and oil. He denied receiving any consideration for the thirteen promissory notes, and alleged that if he did sign those notes they were executed in violation of law, having been given as renewal notes and the old notes had not been returned to him.

In the case at bar the issues are confined to the dispute between the Knutsons and Oscar Ekren; but we set forth the claim against Andrew Ekren also to show the nature of the first action and to determine whatever merit there may be in the defense of res judicata as it affects Oscar Ekren. It will be noted the defendants did not ask for judgment on the notes nor for foreclosure of their liens.

In this action to determine adverse claims the court found that the mortgage which Oscar Ekren and his wife had given to the Knutsons to secure the payment of $486.98 and interest, was a lien on the E 1-2 of said quarter section, but was inferior to a mortgage held by the Federal Land Bank. However, as this mortgage did not involve any of the fifteen causes of action in the case at bar, we dismiss further consideration of it, having made reference to it merely for the purpose of clarification of the situation in the former case.

The court found that the quitclaim deed which the Knutsons set up as security for the payment of their claims was void in that the land was the homestead of Oscar Ekren, and the deed had not been acknowledged by his wife. The court then concluded: that the Knutsons had a lien upon the E 1-2 of the SW 1-4 by reason of the mortgage given to them to secure the payment of $486.98; that the quitclaim deed given by Oscar Ekren et ux. to the Knutsons was void; that Oscar Ekren was entitled to a decree cancelling this quitclaim deed; and that the Ekrens were "entitled to the judgment of this court decreeing that the Defendants, and each of them, have no right, title, interest, lien or claim in, to, or upon said premises, or any part thereof, except as are hereinbefore specifically set forth, and said Defendants, and each of them, and their successors and assigns, are hereby forever debarred from any and all claim or right, or title to, or lien upon said premises, or any part thereof, except as hereinbefore specifically set forth."

There is nothing in the findings of fact, the conclusions of law, the order for judgment, or the judgment, which determines any liability

or lack of liability of Oscar Ekren because of the promissory notes involved here. There is no finding that the notes are void, were given without consideration, or had been paid. The court did not pass specifically upon that issue, nor upon the liability of Oscar Ekren for the alleged payment of one-half of the 1938 taxes, nor any liability of Oscar Ekren on the claim for gasoline, kerosene and oil said to have been furnished by the Knutsons to Oscar Ekren—the fourteenth and the fifteenth causes of action in this suit at bar.

The presiding judge was not the judge who heard the action to quiet title. Consequently he based his decision solely upon the record already mentioned and of which he was asked to take judicial notice. He had no personal knowledge as to the basis for the findings of fact in the action to determine adverse claims.

The burden is upon defendant to establish res judicata. Borden v. McNamara, 20 ND 225, 127 NW 104, Ann Cas 1912C 841; Howe v. Farmers & M. Bank, 129 Okla 232, 264 P 210.

The term "res judicata" means a thing or matter that has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction. See First Nat. Bank v. Covington (CC) 129 F 792, 794; Epstein v. Soskin, 86 Misc 194, 148 NYS 323.

The respondent invokes the rule that the doctrine of res judicata covers those things which might have been litigated, as well as those that were actually litigated. Under such rule it is quite possible that a proposition may not have been presented by the pleadings yet be so necessarily involved therein, that the decision could not be made without determining the issue. On the other hand an issue may be presented by the pleadings but may not have been necessarily involved in the determination of the action. "When it is not certain that the same question was determined in favor of the party, in another action, who relies on the judgment therein as conclusive as to such question, the judgment is not final on the point." Fahey v. Esterley Mach. Co. 3 ND 220, 55 NW 580, 44 Am St Rep 554; Coyle v. Due, 28 ND 400, 149 NW 122. See also Horton v. Emerson, 30 ND 258, 272, 152 NW 529, 533.

In Woodruff v. Coate, 195 Wash 201, 80 P (2d) 555, 559, the court approved the rule that "a matter or question, either of law or fact, is res judicata, or set at rest—if it was a material issue in the proceeding,

directly involved, and not merely incidentally cognizable nor collaterally in question, and was adjudicated, after contest, by a final judgment upon the merits." But here there was no judgment on the merits, so far as the notes and the accounts were concerned.

It is the claim of the Knutsons that the notes sued upon in the present action were secured by the giving of the quitclaim deed; and though the court found the quitclaim deed was void, it did not find or pass upon the question of liability upon the notes, and therefore they may maintain this suit. Ekren claims the validity of the notes was raised by the pleadings and therefore is presumed to have been determined adversely to the Knutsons.

It is true, that the pleadings in the first action affirm and deny liability under the notes, but that in itself is not sufficient to establish res judicata. As said in Fawcett v. Rhyne, 187 Ark 940, 63 SW (2d) 349, "Res judicata" doctrine does not rest upon the fact that a particular proposition has been affirmed and denied in pleadings, but upon the fact that it has been fully and freely investigated and tried. This is in harmony with our decision in Kallberg v. Newberry, 43 ND 521, 533, 170 NW 113, 117, where we hold that this proposition must have actually been directly in issue in a former suit and have been judicially determined; that there must be an identity of the cause of action involved in the former proceeding and that involved in the latter proceeding.

In Davis v. Davis, 65 Miss 498, 4 So 554, it is held "a matter is not res judicata simply because it might have been, but was not, included in the adjudication of a case disposed of, if in fact it was not presented by the pleadings *or necessarily involved therein.*" And therefore an action to establish title to a tract of land by "a decree for title and no decree for rents did not make the claim for rent res judicata," simply because "the claim might have been adjudicated in that suit." See also Lion Oil Ref. Co. v. Crystal Oil Co. 171 Miss 36, 156 So 593. And when an issue is not raised by the pleadings, the record must show "that it formed one of the premises upon which the judgment necessarily rested." Bleakley v. Barclay, 75 Kan 462, 89 P 906, 910, 10 LRA (NS) 230. This is based on the theory that we "reason back from a judgment to the basis on which it stands upon the obvious principle that where a conclusion is indisputable and could have been drawn only

from certain premises, the premises are equally indisputable with the conclusion."

As the supreme court of South Dakota says in Kammann v. Barton, 23 SD 442, 122 NW 416, "In the absence of proof that a particular issue was actually determined in arriving at a former judgment, it (the judgment) is conclusive only as to those facts without the existence and proof of which it could not have been rendered." This court, in the case cited, points out "it is not enough even that it appears that the issue presented in the latter case was presented and ought to have been litigated in the former, but it must appear further that it was litigated and decided, as well as involved" (p. 418). (Citing this court in Teigen v. Drake, 13 ND 502, 508, 101 NW 893.)

There was no question but what a final judgment was rendered upon the merits in the first case. But that action involved title to land and the issue determined was the validity of the quitclaim deed as a lien upon the land. The court found that it was a void deed, not because there was no consideration for it, but because the lien had not been perfected. The land sought to be encumbered was a homestead and the instrument relied upon as the encumbrance was not executed according to law, not having been acknowledged by the wife. The determination of the lien did not depend upon the liability on the notes. The court did not pass upon that feature whatever, nor was it necessary to pass upon that feature.

We state in Gerwein v. McDonnell, 54 ND 509, 209 NW 986: "Any matter in issue directly adjudicated upon, or necessarily involved in, the determination of an action before a competent court in which a final judgment is rendered upon the merits, is as between the parties and privies, conclusively settled by such judgment." This includes those issues necessarily "implied in reaching the final judgment, although no specific finding may have been made with reference thereto." Reko v. Moore, 44 ND 644, 176 NW 115.

The adjudication did not necessarily involve liability on the notes nor did the decision necessarily imply the notes were invalid. The term "necessarily involved" means that the determination of the former action could not have been made without determining the validity of the notes.

A "necessary implication" is a deduction that leaves no room for doubt. It is not one based merely on conjecture or the assumption that the deduction could be made. Whitfield v. Garriss, 134 NC 24, 45 SE 904, 905, and Atlas Acceptance Corp. v. Pratt, 85 Utah 352, 39 P (2d) 710, 714, discuss the meaning of this term. To be "necessarily involved," in the decision, refers ordinarily to a constituent element of the case itself, rather than to the deduction from the facts. As a practical matter there is very little difference in meaning between the terms "necessarily involved" and "necessarily implied." There is a tendency to use the first term where the matter under consideration is set forth in an issue in the case whereas an implication arises from the state of facts.

To hold that the quitclaim deed was not a lien does not necessarily imply that there was no liability on the notes. If the determination as to the lien could not have been made without first determining the issue of liability on the notes, we would have a different question presented to us. "A judgment is not 'res judicata,' unless the identical matter in issue in the subsequent proceeding was determined by the former adjudication." Murphy Chair Co. v. American Radiator Co. 172 Mich 14, 31, 137 NW 791, 795.

Oscar Ekren, the defendant, cites the cases of Nelson v. Nelson, 58 ND 134, 226 NW 476, and Farmers' State Bank v. Anton, 51 ND 202, 199 NW 582, to show that in an action to determine the adverse claims, a cloud on the title might be pleaded as cause of action when connected with the subject of the plaintiffs' action, and at times may be a complete defense; that the maxim "he who seeks equity must do equity" is applicable in an action to determine adverse claims; and that the court may require the discharge of an obligation on the part of the plaintiff before giving him relief, even against a cloud on the title. The principle in these cases is not involved in this action. The court did not determine liability on the notes, nor was it necessary to do this in order to enter the judgment which was entered.

That a party in his action in a court of equity seeks to establish a lien in support of notes and fails therein, should not prevent him from establishing in an action at law, his right to a plain judgment on the

notes when there was no necessity for and no adjudication of the validity of the notes in the former proceeding.

We are satisfied the defense of res judicata was not sustained and therefore it was error for the court to dismiss this action on that ground. The judgment, therefore, must be reversed and the case remanded to the district court for trial upon the issues set forth in the pleadings.

NUESSLE, BURKE, MORRIS, and CHRISTIANSON, JJ., concur.