Mike DOLAJAK and Dolajak Manufacturing and Ironworks, Inc., a corporation, Plaintiffs and Appellants,

v.

STATE AUTOMOBILE AND CASUALTY UNDERWRITERS, a corporation, Defendant and Appellee.

Civ. No. 9286.

Supreme Court of North Dakota.

March 24, 1977.

Rehearing Denied April 25, 1977.

Freed, Dynes, Malloy & Reichert, P. C., Dickinson, for plaintiffs and appellants; argued by George T. Dynes, Dickinson.

Mackoff, Kellogg, Kirby & Kloster, P. C., Dickinson, for defendant and appellee; argued by Ward M. Kirby, Dickinson.

SAND, Justice.

Dolajak, plaintiff and appellant, appealed from a summary judgment issued by the district court, Stark County, sixth judicial district, in favor of defendant and appellee, State Automobile and Casualty Underwriters.

A brief resume of the factual background will be helpful to understand the present appeal.

The Dolajaks had contracted with Gary Bos and Steven Bos to erect a used silo for them in Montana.

On 16 June 1972, when the silo was approximately 60 feet in the air and within a few hours of completion, a windstorm developed throwing the silo off its foundation and virtually destroying it. Thereafter, Dolajak returned to North Dakota and made no attempt or offer to assist in removal of the silo or to make specific arrangements for the erection of a second silo. Bos brought an action against Dolajak in Montana for damages. A jury trial resulted in a judgment of $17,626.74 against Dolajak in favor of Bos.

The judgment was appealed to and affirmed by the Montana Supreme Court and is reported in *Bos v. Dolajak*, 534 P.2d 1258 (Mont.1975). This case will be referred to later herein as the Montana case.

In 1974, Dolajak brought an action in Stark County, North Dakota, against State Automobile and Casualty Underwriters to recover under the builders risk insurance policy the sum of $20,000.00 plus $3,000.00 for legal costs connected with the Montana litigation and attorney fees incurred as a result of this action.

The insurance company, defendant and appellee, answered by generally denying the complaint and by alleging that the policy did not insure against

"A. Loss or damage directly or indirectly by faulty workmanship or faulty design or by the neglect of the assured to use all reasonable means to save and preserve the property at and after any disaster insured against."

After some initial skirmishes on the grounds that the Montana case had not been completed, a motion for summary judgment was made by State Automobile and Casualty Underwriters which was denied on 6 January 1976. Several months later the motion was renewed and on 13 April 1976 the district judge granted a summary judgment in favor of State Automobile and Casualty Underwriters, a corporation, on the ground that the question of negligence had been considered by the Montana case and was now res judicata. Dolajak appealed to this court.

The principal issue before us is whether or not the Montana case decided the issue of negligence so as to be res judicata.

Dolajak, in the Montana case, argued and claimed that the Montana trial court erred because it permitted the jury to consider and assess damages both on the basis of breach of contract and negligence, and that the court should have required a determination on one or the other, but not both.

On this question the Montana Supreme Court, 534 P.2d 1258, on page 1261, after reciting the factual situation, said:

"Under this fact situation plaintiffs [Bos] were entitled to go to the jury with instructions on damages relating to both breach of contract and to negligence. *Gunderson v. Brewster*, 154 Mont. 404, 466 P.2d 589."

The Montana Supreme Court upheld the judgment based on the jury verdict.

The North Dakota trial court made findings of fact, conclusions of law, and issued its summary judgment wherein it had concluded that Dolajaks were negligent and that the question of negligence had been decided by the Montana case and the issue of negligence was a matter now res judicata.

With this brief resume, we now examine the issue before us.

We are first concerned whether or not Rule 52(a), North Dakota Rules of Civil Procedure, applies as to the findings of fact made by the North Dakota trial court. The findings by the trial court rested solely

upon documentary evidence (even though there was testimony introduced before the motion for summary judgment was renewed) as distinguished from oral testimony before the court. Therefore, is the "clearly erroneous" rule under Rule 52(a), NDRCivP, applicable? 5A Moore's Federal Practice (2d ed.) ¶ 52.04, page 2677, states that:

"A number of courts likewise have held that findings of fact based on documentary evidence, on uncontradicted testimony, on stipulated facts, on testimony taken by depositions, and in similar situations where credibility is not seriously involved or, if it is, where the reviewing court is in just as good a position as the trial court to judge credibility, are not binding on the appellate court and will be given slight weight on appeal."

This is followed by an impressive list of cases. However, there are contrary cases holding that the "clearly erroneous" rule applies in every instance.

However, we note that on appeals from administrative agencies to the district court, and from the decision of the district court to this court, we review the decision of the administrative agency rather than the decision of the district court on the basis that this court is as capable of reviewing the record as is the district court. On such reviews this court will review the decision of the administrative agency whose findings of fact are given appreciable weight. See, *Geo. E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau*, 171 N.W.2d 104 (N.D.1969).

Moore's Federal Practice, *supra*, at page 2683, quoted from an opinion by Judge Frank in the case of *Orvis v. Higgins*, 180 F.2d 537, 539 (2d Cir. 1950), *cert. denied* 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595:

"Where a trial judge sits without a jury, the rule varies with the character of the evidence: (a) If he decides a fact issue on written evidence alone, we are as able as he to determine credibility, and so we may disregard his finding. (b) Where the evidence is partly oral and the balance is written or deals with undisputed facts,

then we may ignore the trial judge's finding and substitute our own, (1) if the written evidence or some undisputed fact renders the credibility of the oral testimony extremely doubtful, or (2) if the trial judge's finding must rest exclusively on the written evidence or the undisputed facts, so that his evaluation of credibility has no significance."

Moore concludes this topic by saying:

"But the intent written in Rule 52's recipe on the scope of appellate review singles out the case where the trial court had 'the opportunity . . . to judge of the credibility of the witnesses,' and he has no such opportunity relative to non-demeanor testimony. And for litigants the pudding is the payoff, not the cook's intent."

In *Wolff v. Schlenker*, 75 N.D. 645, 31 N.W.2d 793 (1948), this court said:

"But in so far as the testimony given by deposition is concerned he is in no better position than is this court to pass upon it. Neither, for that matter, is the jury."

See also, *Gilliland v. Courtesy Motors, Inc.*, 232 N.W.2d 828 (S.D.1975); and *Geo. A. Clark & Son, Inc. v. Nold*, 85 S.D. 468, 185 N.W.2d 677 (1971), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63.

We conclude that the evidence considered by the trial court consisted of documentary evidence and that this court is as capable of reading and understanding the documentary evidence as is the trial court, and that this court therefore is not required to follow Rule 52(a), NDRCivP, under such circumstances. We further believe that the question here is more a question of law than a question of finding of fact.

When is an issue considered res judicata?

In *Knutson v. Ekren*, 72 N.D. 118, 5 N.W.2d 74 (1942), the court quoted with approval from an earlier case that "it is not enough even that it appears that the issue presented in the later suit was presented and ought to have been litigated in the former, but it must appear further that it was litigated and decided, as well as in-

volved." (*Teigen v. Drake*, 13 N.D. 502, 508, 101 N.W. 893.) [Underscoring ours.]

In *Robertson Lumber Co. v. Progressive Contractors, Inc.*, 160 N.W.2d 61 (N.D.1968), this court said:

"The term 'res judicata' means a thing or matter that has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction."

and cited in support thereof *Knutson v. Ekren, supra.*

In *Heasley v. Glinz*, 142 N.W.2d 606 (N.D. 1966), this court said, at page 607:

"The doctrine of res judicata as stated in many cases is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction."

In *State ex rel. Stockman v. Anderson*, 184 N.W.2d 53 (N.D.1971), the court in an original proceeding in the nature of a quo warranto challenging the status of senators elected from multi-senatorial districts, had under consideration the question whether or not the validity of § 29 of the North Dakota Constitution, as amended, was "res judicata" by reason of the three-judge federal court decision in *Paulson v. Meier*, 232 F.Supp. 183 (D.N.D.1964), which held that §§ 26, 29, and 35 of the North Dakota Constitution, as well as § 54–03–01, NDCC, were unconstitutional and in violation of the Fourteenth Amendment to the Federal Constitution. In resolving this question, the court said:

"Generally, a valid and final judgment is binding on all parties of record in the action or proceeding in which the judgment is rendered. 50 C.J.S. Judgments § 767, p. 295. Neither of the petitioners [Jacque Stockman or Lloyd Omdahl] was a party to the proceeding in Federal court, and judgment in that proceeding cannot be held to be res judicata as to them. *Lende v. Wiedmeier*, 179 N.W.2d 736 (N.D.1970)."

In *Paulson v. Meier, supra*, a three-judge federal case, the Secretary of State, Ben Meier, was the defendant, and Paulson was the plaintiff. But the question clearly was whether or not §§ 26, 29, and 35 of the North Dakota Constitution, as well as § 54–03–01 of the North Dakota Century Code, were unconstitutional.

In the *Stockman* case the respondent, Anderson, claimed that the action should be dismissed on the basis that the provisions of § 29 of the North Dakota Constitution had already been declared invalid by a three-judge Federal court.

On the basis of different parties being involved, the court proceeded to entertain the question which came before it as an original proceeding in the nature of quo warranto to determine the status of the Senators elected. After examining the constitutional provisions, it concluded that all of § 29 was invalid. The significant portion of this opinion is that the court did not recognize the prior three-judge Federal court decision as being res judicata, even though the Secretary of State was a party representing the State.

The current North Dakota case which we have before us presently is entitled *Mike Dolajak and Dolajak Manufacturing and Ironworks, Inc., a corporation, v. State Automobile and Casualty Underwriters, a corporation*; whereas the Montana case, as reported in 534 P.2d 1258 (Mont.1975), was entitled *Gary Bos and Steven Bos, plaintiffs and respondents, v. Mike Dolajak, et al., defendants and appellants*. If we were to follow the *Stockman* case the issue of negligence would not be res judicata.

█ At the oral argument in the instant case the parties were requested to provide this court with the instructions to the jury used by the Montana court. These have been received. In examining the instructions, it is eminently clear that the jury was instructed not only on negligence, but also on breach of contract. It further appears that the jury could have decided the question of damages on either one or the other, or both.

We do not have before us the transcript of the Montana trial, nor do we believe that it is essential to review the transcript. In examining the instructions to the jury, we find that the jury was instructed that it could consider and assess damages on breach of contract as well as on negligence. We have no way of knowing, and we further believe that there is no way of knowing under the current state of the record, whether or not the Montana jury awarded damages on contract, on negligence, or on both.

The record does not disclose that any effort was made to have the jury make a specific finding or to interrogate the jury as to its findings, whether it was on breach of contract or negligence. The effort by Dolajak in the Montana Supreme Court wherein they claimed error by not separating the negligence and breach of contract issue comes the closest to a separation of these two items.

In determining whether or not the matter is res judicata it is not sufficient to merely find that it could have been included or could have been determined, but it is necessary to find that it was *actually* decided and determined. The record before us does not provide us with this answer. The record shows that Dolajak was a party to the proceedings in Montana and is a party to the proceedings in the North Dakota case. It further discloses that the subject matter in the North Dakota case is similar to that of the Montana case, but this is not sufficient.

We do not have any assurance that the jury in the Montana case decided the question of damages against Dolajak on the basis of breach of contract or on negligence. The question we have before us is whether or not Dolajak was negligent so as to render the insurance policy inoperative. With the state of the record before us we can only speculate that negligence was considered by the jury. We believe that speculation is not sufficient and falls short of meeting the standards of res judicata.

We conclude that the question of negligence has not been resolved so as to make it a matter of res judicata, and therefore we conclude that the trial judge committed error in granting the summary judgment.

The summary judgment accordingly is reversed and the case is remanded to the district court for trial of the issues.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.