Alve W. McCROSKEY, Plaintiff
and Appellant,

v.

Gerard FETTES and Donn Weaver, individually and as members of the Fargo Police Department, and The City of Fargo, a municipality, Defendants and Appellees.

Civ. No. 10370.

Supreme Court of North Dakota.

July 21, 1983.

Frederick D. Kraemer, of Kraemer, Beauchene & Associates, Fargo, for plaintiff and appellant.

E. Thomas Conmy III, of Nilles, Hansen, Selbo, Magill & Davies, Fargo, for defendants and appellees.

VANDE WALLE, Justice.

Alve W. McCroskey appealed from a judgment of the district court of Cass County dismissing his cause of action against the defendants. We affirm.

This is the third appeal involving McCroskey's cause of action. In the first appeal, involving different defendants, we reversed a judgment dismissing McCroskey's complaint for failure to state a cause of action. See *McCroskey v. Cass Cty.,* 303 N.W.2d 330 (N.D.1981). In the second appeal we reversed a summary judgment in favor of the defendants in this case and remanded for further proceedings. *McCroskey v. Fettes,* 310 N.W.2d 773 (N.D.1981). Apparently the cause of action in *McCroskey v. Cass Cty.* was settled out of court. The cause of action in *McCroskey v. Fettes* was tried to the court and resulted in a judgment in favor of the defendants from which judgment McCroskey appealed. Because the proceedings and many of the facts are set forth in our previous opinions, we will refer to them herein only as may be necessary to our decision affirming the judgment.

*McCroskey v. Fettes, supra,* 310 N.W.2d at 774, sets forth the basic factual situation:

"The undisputed facts are that at approximately 8:00 p.m. on December 5, 1978, the officers saw McCroskey standing by a car, which turned out to be his own, in a downtown parking lot. It appeared to the officers that McCroskey was either urinating or tampering with the car, although Officer Weaver admitted in his deposition that McCroskey could have been unlocking a car door. Officer Weaver approached McCroskey, who was by then sitting in the car with the engine running. He asked McCroskey to sit in the squad car. While sitting in the squad car, Officer Weaver asked McCroskey to blow his breath up toward the front which he did. As McCroskey wished to drive his car home, he refused the officers' offer to give him a ride home or to call a cab for him. The officers then decided to take McCroskey in for detoxification. In dispute is whether or not McCroskey was argumentative and whether or not he smelled of alcohol. McCroskey testified he had not had a drink that evening. When he was taken to the Cass County jail, he was allowed to call his wife."

In his first allegation of error, McCroskey takes issue with certain findings of the trial court. McCroskey argues that the finding that McCroskey spent a part of the afternoon and evening in the Round Up Bar (McCroskey was taken into custody in the parking lot next to the Round Up Bar) and that he was drinking whiskey sours is clearly erroneous. McCroskey points out that the only evidence to support this finding is the deposition of Nancy Tuttle, the barmaid, and that there is direct evidence to the contrary from McCroskey's wife, Lois, who testified he was at home during the afternoon, and from Sidney Hogfoss, who the barmaid testified was with McCroskey in the bar in the afternoon. Because the evidence in support of the trial court's finding that McCroskey was in the bar during that time was provided by the barmaid through a deposition, he contends we should make an independent determination as to the findings made by the trial court.[1]

In *Krohnke v. Lemer,* 300 N.W.2d 246 (N.D.1980), and *Dolajak v. State Auto. & Cas. Underwriters,* 252 N.W.2d 180 (N.D. 1977), we held that where the findings of the trial court rest solely upon documentary evidence, as distinguished from oral testimony, this court is not bound by Rule 52(a), N.D.R.Civ.P., in reviewing those findings and is as capable of reading and understanding the documentary evidence as is the trial court. In this instance, although the testimony of the barmaid was by deposition, McCroskey, his wife, Lois, and Hogfoss testified in person. Thus the trial court was in a position to determine the credibility of their testimony. Therefore, we do not believe the holding in *Krohnke* and *Dolajak* is fully applicable to this matter.[2]

■ The trial court determined that the testimony of McCroskey and his witnesses was not credible for several different reasons which McCroskey contends also are clearly erroneous. McCroskey takes issue with the finding that he was urinating out-

---

1. The fact that McCroskey was in the bar during the afternoon and evening prior to his being taken into custody by the officers is, of course, "after the fact" and is not necessarily pertinent to the issue of whether or not the officers properly performed their nondiscretionary duty in determining if McCroskey was "apparently intoxicated" within the meaning of Section 5–01–05.1, N.D.C.C. The fact that McCroskey had been in the bar apparently was not known by the officers at the time they took him into custody. This was recognized by the trial judge in his conclusions of law wherein he concluded that the officers had properly made observations that McCroskey was apparently intoxicated and that he would be a danger to himself and others if permitted to drive home

and that their observations were "fortified by overwhelming evidence that the Plaintiff was in fact intoxicated."

2. In *Krohnke* the trial judge died after the trial of the case but before he was able to render a decision. The parties stipulated that the case should be decided on the transcript of the proceedings. In *Dolajak,* findings by the trial court, on a summary-judgment motion, rested *solely* upon documentary evidence. This court noted that the question involved, i.e., whether or not a jury verdict in Montana was res judicata as to the issue of negligence, was more a question of law than a question of a finding of fact.

side his car at the time the officers observed him. McCroskey testified that the "puddle" on the ground by his car was caused from a glass of liquid he found on the top of his car when he returned to it and that he poured the liquid on the ground, thus causing the "puddle," and, because it was a cold evening, also causing the steam to arise from the "puddle." These findings were made by the trial court for the purpose of indicating why the court gave little credibility to the testimony of McCroskey that he had not been drinking and thus was not intoxicated prior to the time he was taken into custody. Although McCroskey provides what he considers to be a reasonable explanation of these circumstances, we have examined the record and the findings of the trial court, including the reasons that the trial court ascribed for disregarding the evidence proffered by McCroskey and his witnesses, and we cannot determine those findings are clearly erroneous. *Gross v. Sta-Rite Industries, Inc.,* 322 N.W.2d 679 (N.D.1982); Rule 52(a), N.D.R.Civ.P. In reaching our conclusion we have kept in mind that Section 5–01–05.1, N.D.C.C., does not require that a person be intoxicated before he may be taken into custody but rather provides that the officers may take into custody any person "apparently intoxicated." Thus actual proof of intoxication is not required. Although there may be another reasonable

explanation of the action, if it is reasonable for the officers to assume that the person is intoxicated, the requirements of the statute are satisfied.

■ In his second issue McCroskey argues that the trial court did not properly apply the law of *McCroskey v. Fettes, supra.* In that case, relying upon *McCroskey v. Cass Cty., supra,* we determined that certain nondiscretionary acts must be performed and that it is nondiscretionary "that the officers make the observations necessary to determine whether or not the subject is apparently intoxicated and, if so, whether or not he constitutes a danger to himself or others before taking him to jail for detoxification. The actual determination is discretionary as long as it is based upon observations." 310 N.W.2d at 776.

McCroskey contends that the evidence is not sufficient to induce reasonable men to conclude that McCroskey was intoxicated.[3] We disagree. Although McCroskey not only disputes some of the facts found by the trial court but also places a different interpretation upon them, and urges that the facts are not necessarily evidence of intoxication, we conclude that the facts as found by the trial court are sufficient to support its conclusion that the police officers made observations that McCroskey was apparently intoxicated and that he would be a danger to himself and others if permitted to

**3.** In order that a person may be taken to his home, to a local hospital, or—whenever such person constitutes a danger to himself or others—to a jail for purposes of detoxification, McCroskey contends that the same standard should apply as that required for a warrantless arrest, i.e., reasonable cause. See Sec. 29–06–15, N.D.C.C.; *State v. Klevgaard,* 306 N.W.2d 185 (N.D.1981). Because there is a temporary deprivation of freedom, although it is for the benefit of the person taken into temporary custody as well as for the benefit of the public, McCroskey's argument has considerable merit. We hesitate, however, to apply the law of criminal arrest to the temporary custody contemplated in Section 5–01–05.1, N.D.C.C. Section 5–01–05.1 was enacted to provide assistance and medical care to persons publicly intoxicated and to eliminate punishment for public intoxication. See 1969 N.D.Sess.Laws, Chapter 91. If Section 5–01–05.1 had not been enacted, and the statute (Section 5–01–05) making pub-

lic intoxication a crime repealed (by the same Act), McCroskey and others similarly situated may have been arrested for public intoxication and subjected to criminal charges. The obvious purpose of the enactment was to consider alcoholism an illness rather than a crime and thus to assist, rather than punish, those persons publicly intoxicated. See Minutes of the Judiciary Committees of the House and Senate which considered Senate Bill 286, subsequently codified as Chapter 91 of the 1969 North Dakota Session Laws. Although we agree that there must be a reasonable basis upon which the officers determine that a person is "apparently intoxicated" as specified in Section 5–01–05.1, N.D.C.C., we hesitate, as we have said, to apply the criminal standards of probable cause to this matter. Were we to apply such standards, however, we would conclude that the officers had probable cause to determine that McCroskey was intoxicated.

drive home.[4] Those facts, as determined by the trial court, include the officers' observation of a person urinating; the odor of alcohol in McCroskey's car when the police officers approached the car; the odor of alcohol in the squad car when McCroskey was in the squad car; the odor in McCroskey's breath when he was asked to blow into the officer's face; and the irrational behavior when McCroskey insisted he would drive home even though ordered to not do so.[5] The findings of fact and conclusions of law prepared by the trial court clearly indicate the trial court properly applied the rule announced in *McCroskey v. Cass Cty., supra,* and *McCroskey v. Fettes, supra,* to the facts of this case.

The judgment of the trial court is affirmed.

ERICKSTAD, C.J., and PEDERSON, SAND and PAULSON, JJ., concur.

**4.** Initially, the officers offered to drive McCroskey home. It was only after McCroskey became argumentative and refused to permit the officers to drive him home that they determined he should be taken to the Cass County jail for purposes of detoxification.

**5.** McCroskey urges that the officers should have administered sobriety tests to him. The trial court concluded that Section 5–01–05.1, N.D.C.C., "does not require any blood test or Breathalyzer test, nor does the statute under such facts require field tests such as finger to nose test or heel to toe test or a talk-recitation test." We agree that the statute does not require such tests and that the failure of the officers to administer such tests does not necessarily indicate the officers acted unreasonably in determining McCroskey was "apparently intoxicated." However, we also recognize that some reasonable sobriety tests would assist the officers in making their determination as well as assisting a court in reviewing the reasonableness of the actions of the officers.