Edward SCHIELE and Alice Schiele, Plaintiffs and Appellants,

v.

FIRST NATIONAL BANK OF LINTON, a North Dakota corporation, Defendant and Appellee.

Civ. No. 11302.

Supreme Court of North Dakota.

April 16, 1987.

Tschider & Smith, Bismarck, for plaintiffs and appellants; argued by David A. Tschider.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for defendant and appellee; argued by Albert A. Wolf.

MESCHKE, Justice.

Edward and Alice Schiele appeal from a summary judgment in favor of the First National Bank of Linton. The trial court ruled that First National could enforce an assignment of a farm mortgage for the balance of an indebtedness beyond its bid at the Sheriff's sale on its foreclosure of Schiele's home for the same debt. We reverse and remand for further proceedings.

On August 13, 1979, First National loaned the Schieles $135,000. The Schieles executed a promissory note secured both by a real estate mortgage on their home in Linton (home mortgage) and by an assignment of their interest as mortgagees in a farm mortgage from their son and his wife, Remy and Claudia Schiele, as mortgagors (farm mortgage). At that time, First National viewed the loanable value of the home at $85,000 and of the farm mortgage at $50,000, although the home was then valued at a total of $113,000 and the principal amount of the farm mortgage was $150,000 (30 annual payments of $5,000 plus interest at a rate much lower than the bank loan). When they were received, First National credited Remy and Claudia's payments on the farm mortgage to Edward and Alice's note.

In April 1981 Edward and Alice defaulted, and First National foreclosed on their home. First National's complaint did not ask for a deficiency judgment. The foreclosure judgment determined that $140,-187.13 (including interest and costs to June 26, 1985) was currently due on the mortgage. The judgment ordered foreclosure sale of the home and stated that no deficiency judgment was granted.

At the Sheriff's foreclosure sale, First National bid $75,000 for the home. Contending that the foreclosure sale of their home fully satisfied First National's mortgage, Edward and Alice moved for post-judgment relief, requesting return of their farm mortgage. The trial court denied their motion, ruling that the issue involved "is not properly in controversy and therefore does not provide jurisdiction ... to make a decision...."

Edward and Alice then commenced this separate action against First National, seeking reassignment of the farm mortgage. The trial court granted summary judgment to First National, ruling that the foreclosure against the home did not fully satisfy the debt and that North Dakota's anti-deficiency statutes did not preclude First National from enforcing the assign-

ment of the farm mortgage to pay the balance of the debt. The trial court relied on the Sheriff's report of the foreclosure sale to hold that $69,150.59 was still due First National.

At the outset, First National contends that res judicata bars this action because the issues here were necessarily involved in the foreclosure action. In *Farmers State Bank v. Slaubaugh*, 366 N.W.2d 804, 806–807 (N.D.1985), we summarized our approach to this sort of claim:

"This court has stated that the term 'res judicata' can be defined as 'a thing or matter that has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction.' *Robertson Lbr. Co. v. Progressive Contractors, Inc.*, 160 N.W.2d 61, 76 (N.D.1968), citing *Knutson v. Ekren*, 72 N.D. 118, 5 N.W.2d 74 (1942). This court in *Dolajak v. State Auto. & Cas. Underwriters*, 252 N.W.2d 180 (N.D.1977), in Syllabus ¶ 2, stated:

" '2. In order for an issue to be considered res judicata, it is not enough to have been involved in an earlier action, but must have been actually litigated and decided in that action.'

"See *Matter of Estate of Nelson*, 281 N.W.2d 245 (N.D.1979). In *Nodland v. Nokota Co.*, 314 N.W.2d 89, 92 (N.D. 1981), we said: 'The doctrine of res judicata is not applicable as to issues and facts not considered or decided in prior proceedings.' "

In *Farmers State Bank v. Slaubaugh*, *supra*, we held that res judicata did not bar a creditor's second execution, notice of levy, and notice of sale where the court's previous order vacating the first execution did not prohibit further executions and where the record clearly indicated that the trial court had not ruled upon the substantive issues on the first motion to vacate.

In this case, this record establishes that, in the prior foreclosure action, the trial court declined to address the return of the farm mortgage because that issue was not "properly in controversy." We conclude that the prior judgment of fore-

closure against the home is not res judicata on the status of the farm mortgage because the status of that farm mortgage was not actually litigated and decided in that action.

The important issues on this appeal involve how a secured creditor may enforce the same debt against separate items of collateral. In *State Bank of Towner v. Hansen*, 302 N.W.2d 760 (N.D.1981), we made it clear that a creditor secured by both real and personal property had the option of foreclosing against all the collateral in a single proceeding pursuant to the rights and remedies of our real property laws, or foreclosing first against the personal property collateral and thereafter in a separate action against the real property collateral. See *Northern Trust Co. v. Buckeye Petroleum Co.*, 389 N.W.2d 616 (N.D.1986). But, we have not addressed the appropriate procedure for a secured creditor to realize on separately identifiable items of real property collateral for the same debt. To begin, then, our inquiry looks to the character of each item of collateral given as security for this debt, the home and the farm mortgage.

Clearly, the home mortgage is real property collateral subject to the provisions of Chapter 32–19, N.D.C.C. But, the character of the assignment of the farm mortgage is not so obvious. It depends upon the proper application of separate provisions of our Commercial Code, Section 41–09–02(3) [U.C.C. § 9–102(3)], which applies the secured transactions chapter of the Commercial Code to security interests in secured obligations, and Section 41–09–04(10) [U.C.C. § 9–104(j)], N.D.C.C., which excludes liens on real estate from application of the secured transactions chapter of the Commercial Code.

Section 41–09–02(3) [U.C.C. 9–102(3)], N.D.C.C., provides:

"3. The application of this chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this chapter does not apply."

Section 41–09–04(10) [U.C.C. § 9–104(j) ], N.D.C.C., provides:

"*Transactions excluded from chapter.* This chapter does not apply:

\*   \*   \*   \*   \*   \*

"10.   Except to the extent that provision is made for fixtures in section 41–09–34, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder."

As amended in 1966, Official Comment 4 to U.C.C. § 9–102(3) explains:

"4.   An illustration of subsection (3) is as follows:

"The owner of Blackacre borrows $10,-000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. *However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage.*"   [Emphasis added.][1]

*In Re Bristol Associates, Inc.,* 505 F.2d 1056 (3rd Cir.1974), held that assignment of a real estate lease was not a transaction governed by the secured transactions chapter of the Uniform Commercial Code. The court discussed the interrelationship of Pennsylvania's identical enactment of U.C.C. §§ 9–102(3) and 9–104(j) in view of the 1966 amendment to Official Comment 4 to U.C.C. § 9–102(3):

"The changes in wording produced two effects. First, deletion of the references to mortgages distinguishes between the pledge of a note, a separate and distinct contract, and the underlying real estate mortgage. Where a promissory note and mortgage together become the subject of a security interest, only that portion of the package unrelated to the real property is now covered by section 9–102. Second, the added language makes explicit that the promissory note itself falls within the scope of Article 9 by virtue of its status as an instrument. . . . The amendments clarify the rationale of applying Article 9 to the promissory note. They refute the possibility that Article 9 reaches out to encompass every transaction colorably included under section 9–102." 505 F.2d at 1061.

*Rucker v. State Exchange Bank,* 355 So.2d 171 (Fla.Dist.Ct.App.1978), similarly held that assignment of a real estate mortgage as collateral for a bank loan was not a transaction governed by Florida's identical enactment of the relevant provisions of the Uniform Commercial Code because it was specifically excluded by U.C.C. § 9–104(j). *See also* Bowmar, *Real Estate Interests as Security Under the U.C.C.: The Scope of Article Nine,* 12 U.C.C.L.J. 99, 116 (1979–80); Coogan, Kripke, & Weiss, *The Outer Fringes of Article 9: Subordination Agreements, Security Interests in Money and Deposits, Negative Pledge Causes, and Participation Agreements,* 79 Harv.L.Rev. 229, 270–71 (1965). *Compare e.g., Bank of California National Association v. Leone,* 37 Cal.App.3d 444, 112 Cal.Rptr. 394 (Ct.App.1974) [note secured by deed of trust on real property (mortgage) and which was assigned to Bank as collateral for another loan was not debt secured by mortgage on real property for purposes of "one form of action" rule and was governed by Article 9 on secured transactions of the Uniform Commercial Code so that the Bank could proceed to judgment on the assigned note without

---

1.   Before Official Comment 4 was amended in 1966, it provided:

"'An illustration of subsection (3) is as follows:

"The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. *However, when the mortgagee in*

*turn pledges this note and mortgage to secure his own obligation to X, this Article is applicable to the security interest thus created in the note and the mortgage.* Whether the transfer of the collateral for the note, i.e., the mortgagee's interest in Blackacre, requires further action (such as recording an assignment of the mortgagee's interest) is left to real estate law. See Section 9–104(j).'"   [Emphasis added.]

having to foreclose on the real estate trust deed].[2]

■ In this case, we hold that Schieles' assignment of the real estate mortgage, in which they were mortgagees, as security for their own debt is not a transaction governed by Article 9 on secured transactions of the Uniform Commercial Code.

2. But, compare *H & F Hogs v. Huwe*, 368 N.W.2d 553, 556 (N.D.1985) where we held that a mortgagee could not sue mortgagors directly on a promissory note:

"A lender that takes a mortgage on real property as security for a debt foregoes its right to proceed initially against the mortgagor directly on the debt, but receives in return the added protection of an interest in the property. The mortgagee may still recover any deficiency from the mortgagor, but must fully comply with the provisions of Section 32–19–04 and 32–19–06, N.D.C.C., to do so. If we were to adopt the reasoning of H & F and allow a mortgagee to proceed against the mortgagor directly on the debt, the protections afforded mortgagors by the anti-deficiency judgment statutes would be largely vitiated."

3. N.D.C.C. § 32–19–04, provides:

"In an action for the foreclosure or satisfaction of a mortgage, the complaint shall state whether any proceedings have been had at law or otherwise for the recovery of the debt secured by such mortgage, or any part thereof, and if there have been, whether any and what part thereof has been collected. The plaintiff shall also state in his complaint whether he will in a later and separate action demand judgment for any deficiency which may remain due to him after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage."
N.D.C.C. § 32–19–06, provides:

"In any action for the foreclosure of a real estate mortgage or the cancellation or the foreclosure of a land contract, the court shall have the power to render judgment for the amount found to be due at the time of the rendition of said judgment, and the costs of the action, and to order and decree a sale of the premises in such mortgage or contract described, or such part thereof as may be sufficient to pay the amount adjudged to be due and the costs of the action.... The court under no circumstances shall have power to render a deficiency judgment for any sum whatever against the mortgagor or purchaser, or the successor in interest of either, except as hereinafter provided. Where a note or other obligation and a mortgage upon real property have been given to secure a debt contracted subsequent to July 1, 1951, and the sale of the mortgaged premises has failed to satisfy in

Thus, we conclude that both the home and the assignment of the farm mortgage are real property collateral subject to the rights and remedies of our real property laws.

Edward and Alice contend that our anti-deficiency statutes, N.D.C.C. §§ 32–19–04, 32–19–06, and 32–19–07,[3] preclude First

full the sum adjudged to be due and the costs of the action, the plaintiff may, in a separate action, ask for a deficiency judgment, if he has so indicated in his complaint, against the party or parties personally liable for that part of the debt and costs of the action remaining unsatisfied after the sale of the mortgaged premises. Such separate action for a deficiency judgment must be brought within ninety days after the sale of the mortgaged premises. The court, in such separate action, may render a deficiency judgment against the party or parties personally liable, but such deficiency judgment shall not be in excess of the amount by which the sum adjudged to be due and the costs of the action exceed the fair value of the mortgaged premises. *In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value.* In all actions brought for a deficiency judgment and before any judgment can be rendered therein, the determination of the fair value of the mortgaged premises shall first be submitted to a jury at a regular term or to a jury impaneled for that purpose, and no deficiency judgment can be rendered against the party or parties personally liable unless the fair value of the mortgaged premises is determined by such jury to be less than the sum adjudged to be due and the costs of the action.... *The mortgagee* or vendor or the successor in interest of either *shall not be permitted or authorized either before or after the rendition of a judgment for the foreclosure of a real estate mortgage* or the cancellation or the foreclosure of a land contract, if such mortgage or contract was made after July 1, 1951, *to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage* or contract so foreclosed or canceled *in excess of the amount by which such debt and the costs of the action exceed the fair value of the mortgaged premises. Such fair value shall be determined by a jury in the same manner as the fair value is determined in cases where a deficiency judgment is sought in an action to foreclose the mortgage* and such judgment shall be enforced by execution as provided by law except that no such execution shall be enforced after three years after the date of the rendition of such judgment." [Emphasis added.]
N.D.C.C. § 32–19–07, provides:

National from retaining possession of the farm mortgage. They argue that, by retaining possession of the farm mortgage, First National has, in substance, obtained a deficiency judgment, although it did not in fact get a deficiency judgment. First National responds that no deficiency judgment was needed to enforce the assignment of the farm mortgage. It argues that the anti-deficiency statutes do not apply to the assignment of the farm mortgage, as a separate item of collateral for the debt, and do not preclude First National from receiving the difference between the total amount of the adjudicated debt and the amount it bid at the Sheriff's sale because that difference can be calculated without further action or judgment.

The development, purpose, and history of our anti-deficiency statutes were well described in *First State Bank of Cooperstown v. Ihringer*, 217 N.W.2d 857 (N.D. 1974). *See also East Grand Forks Federal Savings & Loan Ass'n v. Mueller*, 198 N.W.2d 124 (N.D.1972) [Teigen, J., dissenting]. Based on that purpose and history, we have construed N.D.C.C. § 32–19–07, to preclude a mortgagee from bringing an action against a mortgagor for a personal money judgment except as permitted by N.D.C.C. §§ 32–19–04 and 32–19–06. *East Grand Forks Federal Savings & Loan v. Mueller, supra; Loraas v. Connolly*, 131 N.W.2d 581 (N.D.1964). These statutes allow a deficiency judgment under very limited circumstances and then only for the amount by which the sum adjudged to be due exceeds the fair value of the foreclosed premises as determined by a jury. While nothing in the statutes prohibits a lending institution from taking additional security for a loan, "[t]he mortgagee ... shall not be permitted or authorized either before or after the rendition of a judgment for the foreclosure of a real estate mortgage ... to bring *any action* in any court in this state for the recovery of *any part* of the debt secured by the mortgage ... in excess of the amount by which such debt and the costs of the action exceed the fair value of the mortgaged premises." N.D.C.C. § 32–19–06. [Emphasis added.]

First National has not yet brought an action or sought a deficiency judgment to realize on the assignment of the farm mortgage. But, it is plain that First National would have to do so to enforce the farm mortgage upon default. Since First National holds the assignment only as security for the mortgagees' debt, the mortgagees would be necessary parties to that action. This action by the mortgagees simply seeks a judgment declaring those respective rights at this time.

Judicial enforcement of the assignment of the farm mortgage in this action, when combined with the effect of the use of the prior foreclosure bid to fix the amount remaining due on the debt, as the trial court ruled, circumvents the plain intent of the anti-deficiency statutes: "In case the mortgaged premises sell for less than the amount due ... on the mortgaged debt and costs of sale, there shall be no presumption that such premises sold for their fair value." N.D.C.C. § 32–19–06.

We recognize that a lender's ability to utilize multiple items of collateral to secure an obligation is an important financial tool which benefits both the borrower and the lender. If that financial tool were unavailable, lenders would be less willing and less able to aid a borrower's financial needs. We must weigh the interests of borrowers and lenders, as mortgagors and mortgagees, in keeping with the well-de-

"Except as otherwise provided in sections 32–19–04 and 32–19–06, neither before nor after the rendition of a judgment for the foreclosure of a real estate mortgage or for the cancellation or foreclosure of a land contract made after July 1, 1951, shall the mortgagee or vendor, or the successor in interest of either, be authorized or permitted to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage or contract so foreclosed. It is the intent of this section that no deficiency judgment shall be rendered upon any note, mortgage, or contract given after July 1, 1951, to secure the payment of money loaned upon real estate or to secure the purchase price of real estate, and in case of default the holder of a real estate mortgage or land contract shall be entitled only to a foreclosure of the mortgage or the cancellation or foreclosure of the contract except as provided by sections 32–19–04 and 32–19–06."

fined purpose of the anti-deficiency statutes. Accordingly, when a mortgagee chooses to foreclose against only one of several items of real estate collateral, we believe the appropriate balance requires that the fair value of the foreclosed item be determined by a jury before the remaining debt is enforced against the other items of real estate collateral. This assures that debt remaining due for enforcement against additional real estate collateral will be determined in the manner contemplated by the statutes. Thus, while First National was free to foreclose upon the home mortgage without simultaneously foreclosing on the assignment of the farm mortgage, the fair value of the foreclosed home must be determined by a jury before First National may enforce the remaining debt against the farm mortgage.

In reaching this conclusion, we do not believe that the possibility of redemption at the bid price during the statutory redemption period equates with the purpose of the fair value determination required by N.D. C.C. § 32–19–06. Redemption depends upon the ability to obtain money for that purpose. A mortgagor who is unable to make timely payments on a mortgage will usually be unable to obtain financing to redeem at the bid price. Thus, redemption is not a remedy, as a practical matter. *See* 1951 Report of the North Dakota Legislative Research Committee, regarding House Bill 541. Even if Edward and Alice were able to redeem their home, the debt remaining was nevertheless determined by the mortgagee in making its bid at the foreclosure sale. N.D.C.C. § 32–19–06 clearly says that a mortgagee's bid at a foreclosure sale cannot be relied upon.

Because of the nature of the several items of collateral in this case and the manner in which First National chose to foreclose against one part of that collateral, we conclude that a proper determination of the fair value of the home is necessary to arrive at the remaining debt enforceable against the farm. We therefore reverse the summary judgment and remand to the district court for a determination, in accordance with the anti-deficiency statutes, of the difference between the fair value of the home and the amount of debt remaining due after its foreclosure sale.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.